**Ralph SAINSBURY et al., Plaintiffs-Appellees,**

v.

**HARTFORD ACCIDENT AND INDEMNITY CO., Defendant-Appellant.**

**Ralph SAINSBURY et al., Plaintiffs-Appellees,**

v.

**HARDWARE MUTUAL CASUALTY CO., Defendant-Appellant.**

Nos. 72–1207, 72–1208.

United States Court of Appeals, Sixth Circuit.

Oct. 20, 1972.

As Amended Nov. 17, 1972.

Arthur J. Stern, Cleveland, Ohio, for Hardware Mutual Casualty Co.; Kitchen, Charles W. Kitchen, Cleveland, Ohio, for Hardware Mutual Casualty Co.; Kitchen, Messner & Leyshon, Cleveland, Ohio, on briefs.

Richard M. Markus, Cleveland, Ohio, for appellees; Sindell, Sindell, Bourne, Markus, Stern & Spero, Samuel C. Asad, Albert J. Morhard, Cleveland, Ohio, on briefs.

Before PHILLIPS, Chief Judge, PECK, Circuit Judge, and McALLISTER, Senior Circuit Judge.

McALLISTER, Senior Circuit Judge.

Appellees, Ralph Sainsbury and John Hronek are residents and citizens of Ohio. They brought this suit for declaratory relief, as hereafter appears, against two insurance companies.

On March 19, 1969, appellees were involved in a motor vehicle collision in the city of Cleveland. Sainsbury was driving his car on the roadway when it suddenly stalled. During a period of approximately ten minutes, he first tried to push it off the roadway; then, from a nearby house attempted to telephone for assistance, and afterward returned to the car to try to start the motor again. While he was seated in the car in an effort to start it, Hronek, coming

from the rear, struck Sainsbury's car. As a result of the collision, Sainsbury sustained multiple injuries including spinal-cord damage which instantly rendered him a paraplegic.

Sainsbury brought suit on May 1, 1969, in the Common Pleas Court of Ohio against Hronek and, after Hronek's answer was filed, Sainsbury filed an amended petition against Hronek and Ed Stinn Chevrolet, Inc. (hereafter referred to as the Chevrolet agency). That suit is still pending in the state court.

It appears that five days before the accident, on March 14, 1969, Hronek signed an order for a new Chevrolet to be purchased from the above-named agency; and, on the same day, he signed a "Retail Order for a Motor Vehicle," a "Retail Installment Contract," and a "Purchaser's Acceptance of Motor Vehicle,"—all of these transactions being with the above-named agency. Hronek had signed an application for the issuance of a Certificate of Title, but the Certificate of Title was not issued to him until March 20, 1969, the day after the collision. At the time of the accident the title was in the Chevrolet agency.

We now come to the present litigation. Sainsbury, the party injured in the collision heretofore mentioned, and Hronek, the driver of the car that caused the injuries, brought this suit against the Hardware Mutual Casualty Company and the Hartford Accident and Indemnity Company for the declaratory relief that Hronek was insured by both companies against the damages to Sainsbury resulting from the accident.

About two years before the accident, a group of insurance policies, and/or indemnity agreements, had been issued by Hardware Mutual Casualty Company to the Chevrolet agency. However, all of these policies were terminated four days before the accident—except one, known as the "Umbrella Policy" of Hardware Mutual Casualty Company. That policy was in full force and effect at the time of the accident, and on the trial the Dis-

trict Court held that Hronek was an insured under Hardware's umbrella policy.

Prior to March 15, 1969, and prior to the accident in this case, the Chevrolet agency communicated with an authorized representative of the Hartford Accident and Indemnity Company. The representative of Hartford thereupon agreed to undertake insurance for the Chevrolet agency, effective March 15, 1969, (before the accident) by an oral binder and a subsequent letter of confirmation, dated March 7, 1969, for that binder. The insurance undertaken by Hartford was of two kinds: an alleged "Umbrella" policy, and Automobile Garage Liability coverage. The District Court held that Hronek was insured under Hartford's umbrella policy, but was not insured under the Garage Liability coverage.

■ Hardware contends that Hronek was not entitled to the benefits of coverage under its umbrella policy because: (a) he failed to report the accident to Hardware; (b) he failed to notify or tender defense of the lawsuit to Hardware, and (c) he failed to allow the Company to exercise its option for defense, as provided in such policy.

The District Court disposed of these contentions by stating the fact that Hronek had no knowledge of the insurance carried by the Chevrolet agency but, nevertheless, on the day after the accident, notified a salesman of the Agency and was told it was doubtful if the Agency had insurance. The Court also observed that the day after Sainsbury amended his complaint and added the Agency as a co-defendant, both insurance companies were notified of the action. Moreover, Hardware conducted a number of investigations and at no time prior to the filing of the action did it give any notice that it considered the notice given to it of the accident to have been tardy. The statement of Hardware's agent, upon deposition, shows clearly that Hardware was not prejudiced by any delay in notification to it of the accident.

The District Court held that under the umbrella policy of Hardware, Hronek was entitled to the benefits of coverage.

Hartford contends that it had no operative umbrella policy in effect at the time of the accident. The Hartford insurance upon which Sainsbury and Hronek rely was not, in form, a regular policy, but a letter confirming an oral binder and is somewhat indefinite, in itself, in determining whether the coverage was that of an "umbrella" type of insurance. However, the case was tried on an Agreed Statement of Facts. In one of the agreed statements, it was set forth:

> "The insurance provided by Hartford at the time of the collision was 'at least as comprehensive as the coverage provided by' Exhibits 7–13, and provided increased coverage for comprehensive and plate glass coverage."

Exhibit 9, included in the above-quoted "Exhibits 7–13," is labeled "Umbrella Liability Policy," and was issued by Hardware Mutual Casualty Company.

The District Court was correct in holding that both umbrella policies of Hardware and Hartford (by virtue of the written binder) should contribute toward indemnity, subject only to the $10,-000.00 retained limit deduction.

Furthermore, the District Court held, contrary to the contentions of appellees, that Hartford's Garage Liability Coverage, which was the "underlying insurance," was inapplicable because Hronek was not an insured thereunder as he was excluded by specific terms of that policy; and no one is challenging the Court's decision on the grounds of the exclusion. However, Hardware insists its umbrella coverage would commence at a $300,000.00 limit because of the Declarations in its policy. These Declarations and the Insuring Agreement read together are as follows:

> "III. UNDERLYING LIMIT—RETAINED LIMIT: The Company shall be liable only for ultimate net loss resulting from any one occurrence in excess of either
>
> (A) The amounts of the applicable limits of liability of the underlying insurance as stated in Item 5 of the Declarations [$300,000] . . ., or
>
> (B) If the insurance afforded by underlying insurance is inapplicable to the occurrence, the amount stated in the Declarations as the retained limit [$10,000] . . .
>
> IV. LIMITS OF LIABILITY: Regardless of the number of persons and organizations who are insureds under this policy and regardless of the number of claims made and suits brought against any or all insureds, the total limit of the company's liability for ultimate net loss resulting from any one occurrence shall be the occurrence limit stated in the Declarations [$1,000,-000] . . . ."

The only possible portion of the "underlying insurance," referred to in the Declarations of the Umbrella Policy would be Hardware's Garage Liability Coverage, which, it is agreed, was replaced by the Hartford binder. But, in the Hartford Garage Liability Policy was an exception that provided it was inapplicable only when a car titled in the dealer was being operated "pursuant to an agreement of sale." Hronek was operating a car "pursuant to an agreement of sale," at the time of the accident. The Court held that such exception made the underlying Garage Liability Policy inapplicable. Since the underlying coverage is *inapplicable*, the clear language of the umbrella coverage, quoted above, requires that the umbrella coverage is excess over the "retained limit" which, in this case, is agreed to be $10,000.00; and the District Court so held.

We have considered the contention of Hardware that under Insurance Agreements III(B), already quoted, the underlying coverage is applicable to the "occurrence" and that, accordingly, as "occurrence" is defined as an accident,

the underlying insurance insures against an accident. The complexities of language in the insurance coverage in this case seem, at times, full of uncertainty; but we are of the view that the District Court was correct in holding that the exclusionary provision of Hartford's Garage Liability Policy applied to Hronek, and that he was not an insured under that policy; and that policy, which was the underlying insurance, was "inapplicable" under the Insurance Agreement III(B). Since it was "inapplicable," the language of the umbrella policies, in the same provision of the Insurance Agreements, requires that the umbrella coverage is the retained limit of $10,000.00, and both Hardware and Hartford provide such umbrella coverage for Hronek. The District Court, as heretofore stated, properly ordered and adjudged that both "umbrella" policies contribute toward indemnity, subject only to the $10,000.00 retained limit deduction, or subject only to a $10,000.00 deductibility.

We have reviewed other claims of error and find them not meritorious.

In accordance with the foregoing, the order of the District Court is affirmed.