D. H. OVERMYER TELECASTING COMPANY, INC., APPELLANT; CONNERY, APPELLEE, *v.* AMERICAN HOME ASSURANCE COMPANY, APPELLEE.

(No. 50215 — Decided March 10, 1986.)

*Michael J. Garvin* and *Kevin T. Duffy,* for appellant.

*Arter & Hadden, Mark A. McClain* and *William S. Burton,* for appellee Edmund Connery.

*George W. Stuhldreher,* for appellee American Home Assurance Co.

ANN MCMANAMON, J. Plaintiff D. H. Overmyer Telecasting Co., Inc. ("Telecasting"), in a timely appeal, challenges the dismissal of its complaint against American Home Assurance Co. ("American"), in the common pleas court. Edmund Connery ("Connery"), a lawyer and American's insured, was brought into the suit by Telecasting as an involuntary plaintiff. Connery and American moved for dismissal in separate motions, both of which were granted.

The Connery motion was based on allegations that (1) the court lacked personal and subject matter jurisdiction, and (2) the complaint failed to state a claim pursuant to Civ. R. 12(B)(6). American's motion was also directed to Civ. R. 12(B)(6). The motions were granted on March 29, 1985. Three errors are assigned for review.[1]

## I

The first count of Telecasting's complaint seeks declaratory relief against American to determine whether its policy on Connery covers unresolved claims which are the subject of a case presently pending against Connery in federal court. The second count alleges that American has refused to negotiate in good faith concerning settlement proposals by Telecasting in the federal suit.

Telecasting's professional liability claim against Connery stems from alleged conduct by Connery which is the subject of certain findings of fact and conclusions of law entered in a separate bankruptcy action, *In re D. H. Overmyer Telecasting Co.* (N.D. Ohio 1982), 23 Bankr. 823.[2]

While Connery figures prominently throughout the one-hundred-seventeen-page opinion of the bankruptcy court, the court's forty-fourth conclusion of law is typical of his treatment in the opinion:

"Mr. Connery, acting as counsel to Telecasting, failed to carry out his fiduciary obligations to that client, and permitted Telecasting to be defrauded in transactions in which he, as its counsel, was obligated to act to prevent its being harmed. Mr. Connery breached his obligations to Telecasting and its creditors by subverting its interests to those of Mr. Overmyer, which he knew to be inimical to Telecasting." *D. H. Overmyer, supra,* at 931.

For its first assignment of error, Telecasting posits that the trial court erroneously dismissed its action for declaratory judgment.

The entertainment of a declaratory judgment action rests within the sound discretion of the trial court. *Schaefer* v. *First Natl. Bank* (1938), 134 Ohio St. 511 [13 O.O. 129]. Accordingly, we are required to determine whether the trial court abused its discretion, which implies more than an error in judgment, but connotes "an unreasonable, arbitrary or unconscionable attitude on the part of the trial court * * *." *Lee* v. *Jennings Transfer Co.* (1967), 14 Ohio App. 2d 221, 223 [43 O.O. 2d 452].

The Declaratory Judgments Act was fashioned to provide remedies where none exists, in the situation where a particular controversy has not advanced to the point where a conventional remedy is reasonably available. *Murray* v. *McCrystal* (1955), 99 Ohio App. 441, 446 [59 O.O. 194]. However, the special remedy of declaratory relief may not be based on speculative or hypothetical factors, but requires a "real controversy * * * justiciable in character * * * [making] speedy relief * * * necessary to the preservation of

---

[1] Telecasting's assignments of error are:

I

"The trial court erred by dismissing appellant's action to determine the coverage of the involuntary plaintiff's professional liability insurance policy."

II

"The trial court erred by not treating the involuntary plaintiff properly as a plaintiff."

III

"The trial court erred by holding that the appellant does not have the right of action based upon the defendant-appellee's unreasonable refusal to negotiate toward settlement of a legitimate insurance claim."

[2] The distribution of assets resulting from that bankruptcy action was subsequently affirmed by the district court, and appeals are still pending.

rights that may be otherwise impaired or lost." *Schaefer, supra,* at paragraph three of the syllabus. Moreover, in *Chitlik* v. *Allstate Ins. Co.* (1973), 34 Ohio App. 2d 193 [63 O.O. 2d 364], at paragraph two of the syllabus, this court held that before an injured person can maintain an action against a tortfeasor's insurer, the injured person must first obtain a judgment against the insured. We have already applied the *Chitlik* rule to an action for declaratory relief. In so doing, we held:

"The record discloses that plaintiff has not obtained a judgment against the insured. He, therefore, has no right to bring a direct suit against defendant, Hamilton Mutual Insurance, the liability insurer. See *Chitlik, supra.* Until plaintiff secures a judgment against the insured, he is not a 'person interested' to the insurance contract and, therefore, has no right to a declaratory judgment pursuant to Section 2721.03 R.C." *Turner* v. *Hamilton Mut. Ins. Co.* (Feb. 28, 1974), Cuyahoga App. No. 32871, unreported.

In this context, the Telecasting complaint merely reflects that the plaintiff is presently pursuing an action against Connery for "professional liability" in federal court. Telecasting neither pleads that liability has been determined nor that any adjudication of rights subject to impairment or loss exists.

We hold that Telecasting's bare assertion that the conduct of Connery has been unfavorably described in the Telecasting bankruptcy action does not meet the requirements of *Chitlik* and *Turner.*

Further, we reject the argument that findings and conclusions in Telecasting's bankruptcy case, in which Connery was not a party, establish any liability on his part to Telecasting. Indeed, a bankruptcy court has no power to render findings which would affect Telecasting's claim of attorney malpractice. Jurisdiction of bankruptcy courts is limited to cases "arising in or related to cases under title 11." Section 1471(b), Title 28, U.S. Code. The findings of a bankruptcy court are necessarily cast in the context of that law, and conduct which may be culpable when analyzed from bankruptcy law considerations may assume an entirely different significance in terms of general civil law. See, e.g., *Texas* v. *Wellington Resources Corp.* (C.A. 5, 1983), 706 F. 2d 533 (no collateral estoppel effect between state court determination of property for state law purposes, and federal bankruptcy treatment of same property as a federal bankruptcy issue).

Finally, we note that it is uncontroverted that American is Connery's insurer. However, until alleged malpractice is adjudicated in the Telecasting-Connery case, in the district court, there is no established form of conduct by which the policy may be analyzed.

As the Ohio Supreme Court has stated:

"Where the resolution of the controversy involved in an action for a declaratory judgment depends largely on a determination of facts although it may also involve some determination of the meaning of language in a contract or legislative enactment, the trial court, in the exercise of sound discretion, may either entertain or not entertain such action. * * *" *Smith* v. *Municipal Civil Service Comm.* (1952), 158 Ohio St. 401, 402-403 [49 O.O. 277].

Accordingly, we find no abuse of discretion in the trial court's refusal to grant declaratory relief to Telecasting which, as a third-party to the insurance contract, possesses no present rights in danger of impairment or loss. Appellant's first assignment of error is not well-taken.

II

For its second assignment of error, Telecasting contends that the trial court erred in not treating Connery as a plaintiff.

In its complaint, Telecasting joined Connery as an involuntary plaintiff, claiming that such joinder was proper pursuant to Civ. R. 19(A). Connery responded with his motion to dismiss Telecasting's complaint pursuant to Civ. R. 12(B)(1), (2) and (6).

Civ. R. 19(A) provides that a prerequisite for joinder of an involuntary plaintiff is that the party "should join as a plaintiff but refuses to do so * * *." The record does not indicate that Connery was requested to join as a plaintiff although, in his brief, Connery admits he would not have voluntarily joined. We hold that Connery was improperly joined as an involuntary plaintiff in the absence of a demonstrated refusal on his part.

Connery's response with a Civ. R. 12(B) motion was equally improper. Having been joined as an involuntary plaintiff, Connery had no claim for relief pending against him, and was therefore incapable of asserting "defenses" pursuant to Civ. R. 12(B). Only American, as the named defendant, had proper standing to assert a defense. Connery's proper recourse was to raise the objection of misjoinder of parties. As Civ. R. 21 provides, "* * * [p]arties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just. * * *" In not challenging his joinder, Connery effectively waived objection to his presence in the suit. *Celanese Corp. of America* v. *Vandalia Warehouse Corp.* (C.A.7, 1970), 424 F. 2d 1176.

However, the trial court also dealt with American's motion to dismiss. As we will discuss in appellant's third assignment of error, the court properly dismissed the claims against American, thereby mooting any error with respect to Connery's motion. Accordingly, Telecasting's second assignment of error is overruled.

## III

For its third assignment of error, Telecasting claims that the trial court erroneously dismissed its claim against American for the insurance company's unreasonable refusal to settle the pending Connery lawsuit in federal court.

Telecasting contends that even before judgment, an injured party has a substantial right in a tortfeasor's insurance policy. It is plaintiff's position that a claim that an insurer has breached a pre-adjudication good faith duty to negotiate with the injured party will withstand a Civ. R. 12(B)(6) motion. We disagree.

This court has already held that before an injured person can maintain an action against the tortfeasor's insurer, the injured person must obtain a judgment against the insured. *Chitlik, supra.* This holding reflects the language of R.C. 3929.06, which authorizes only judgment creditors to reach proceeds of an insurance contract.

Ohio recognizes a duty incumbent upon insurance companies to act in good faith in settling claims, but this duty runs only from the insurer to the insured, not to third parties. *Hoskins* v. *Aetna Life Ins. Co.* (1983), 6 Ohio St. 3d 272. Any claims of bad faith negotiations by third-party claimants cannot be based on speculation, but must arise from adjudicated liability. *Chitlik, supra.*

In its brief, Telecasting seeks to raise Ohio Adm. Code 3901-1-07(C)(6), which includes as an unfair trade practice:

"not offering first party or third party claimants, or their authorized representatives who have made claims which are fair and reasonable and in which liability has become reasonably clear, amounts which are fair and reasonable as shown by the insurer's investigation of the claim, providing the amounts so offered are within policy

limits and in accordance with the policy provisions[.]"

Pursuant to Civ. R. 44.1(A)(2), a party wishing to rely on an administrative regulation must "give notice in his pleading or other reasonable written notice." Accordingly, the purported Administrative Code claim by Telecasting was not before the trial court when it dismissed Telecasting's complaint.

Moreover, even if the claim were properly before us, *Chitlik* would still require Telecasting to plead the existence of a judgment against the insured before the appellant's complaint could survive. An administrative ruling does not rise to the level of a judicial decision. See, generally, *South Euclid* v. *Jemison* (Oct. 31, 1985), Cuyahoga App. No. 4680, unreported, affirmed as relevant herein (1986), 28 Ohio St. 3d 157.

Accordingly, Telecasting's third assignment of error is not well-taken.

The trial court was within its sound discretion when it dismissed Telecasting's claim for declaratory relief as well as its claim for refusal to settle.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

KRUPANSKY, J., concurs.

MARKUS, P.J., concurs with opinion.

MARKUS, P.J., concurring.

While I reach the same result, I disagree with the reasons provided by the majority opinion.

In appropriate cases, a tort claimant is a proper party for a declaratory relief action to determine the applicability of the alleged tortfeasor's liability insurance. *Celina Mut. Ins. Co.* v. *Sadler* (1966), 6 Ohio App. 2d 161, 165 [35 O.O.2d 319]; *Maryland Cas. Co.* v. *Pacific Coal & Oil Co.* (1941), 312 U.S. 270, 274 (applying Ohio law). Certainly, a tort claimant can be the plaintiff for such a declaratory relief action, if he can be a proper defendant. See, *e.g.*, *Sainsbury* v. *Hartford Accident & Indemn. Co.* (C.A.6, 1972), 469 F.2d 392 (applying Ohio law). Such proceedings need not await the tort claimant's recovery of a judgment against the alleged tortfeasor. *Travelers Indemn. Co.* v. *Cochrane* (1951), 155 Ohio St. 305 [44 O.O. 302], paragraph one of the syllabus (note that tort claimant was a party even though propriety of his presence was not discussed).

A tort claimant cannot prevail on an action for money damages against the alleged tortfeasor's insurer until the tort claimant has obtained a judgment against the tortfeasor. *Chitlik* v. *Allstate Ins. Co.* (1973), 34 Ohio App.2d 193 [63 O.O.2d 364]. The tort claimant's rights against the alleged tortfeasor's insurer stem from R.C. 3929.06, rather than any contractual relationship. By the terms of that statute, those rights do not mature until the tortfeasor's liability insurer fails to satisfy a judgment against its insured within thirty days after its entry.

However, the tort claimant can properly join the alleged tortfeasor's insurer as an additional party in the original tort action. *Heuser* v. *Crum* (1972), 31 Ohio St. 2d 90 [60 O.O.2d 56], paragraph two of the syllabus; *Lawreszuk* v. *Nationwide Ins. Co.* (1977), 59 Ohio App. 2d 111, 114 [13 O.O.3d 165]. In so doing, the tort claimant asserts the prospective liability of the tortfeasor's insurer, which cannot be finally adjudicated before the claimant obtains a judgment against the alleged tortfeasor. *Id.* Further, a tort claimant can now require the alleged tortfeasor to disclose the terms of any prospectively applicable liability policy. Civ. R. 26(B)(2). Thus, the tort claimant has an identifiable interest in the meaning of the alleged tortfeasor's insurance con-

tract, even before he obtains a judgment.

However, this is not an appropriate case for declaratory relief instigated by the tort claimant, the insured, or the insurer. The applicability of this policy depends on the nature of the insured's liability, if the insured is liable. The insurer may have a duty to indemnify the alleged tortfeasor under some facts alleged by the tort claimant, but no duty to indemnify under other facts alleged by the tort claimant.

Thus, the policy's applicability can only be resolved by a trial of the issues presented by the pending tort case. The declaratory relief proceeding would not accelerate the determination of that issue, or conserve any party's efforts and expense. It only serves to duplicate another case already in process. Hence the trial court properly exercised its discretion by declining to grant relief in favor of any party to this case.

With regard to the third assignment of error, the tort claimant has not stated a legally cognizable damage claim against the alleged tortfeasor's insurer. Present Ohio case law does not recognize any duty owed by the tortfeasor's insurer to the tort claimant. The insurer has a duty only to its insured not to subject the insured to liability beyond policy limits by failing to negotiate with the tort claimant in good faith. *Slater* v. *Motorists Mut. Ins. Co.* (1962), 174 Ohio St. 148 [21 O.O.2d 420]; *Wasserman* v. *Buckeye Union Cas. Co.* (1972), 32 Ohio St. 2d 69 [61 O.O.2d 326]; *Spitler* v. *State Auto. Mut.* (1980), 61 Ohio St. 2d 242 [15 O.O.3d 255].

By statute, a tort judgment may include prejudgment interest if the tortfeasor or his liability insurer fails to negotiate in good faith. R.C. 1343.03(C). But that statute does not subject the insurer to additional compensatory or punitive damages for a failure to deal fairly with the tort claimant.

The tort claimant in this case asserts that an insurance department regulation creates a duty for the insurer to deal fairly with the tort claimant, and corresponding liability for a breach of that duty. In my view the tort claimant can properly rely on the cited regulation without expressly pleading that regulation in the complaint. The tort claimant's trial court brief provided adequate notice of his intention to rely on that regulation. Civ. R. 44.1(A)(2); *Harold* v. *Paradise* (1973), 36 Ohio App. 2d 71, 76 [65 O.O.2d 66]; *Americana Leasing, Inc.* v. *Neyman* (Oct. 10, 1985), Cuyahoga App. No. 49564, unreported.

However, we need not determine whether the cited regulation purports to create a new type of civil liability rather than a regulatory tool for administrative proceedings. Likewise, we need not determine whether the legislation which authorized this regulation empowered the insurance department to create civil damage actions. No court can determine whether the liability insurer has negotiated with a claimant fairly until the claimant has finally established his right to recover and the amount of any such recovery. In this case, the claimant would also have to demonstrate the insurer's duty to indemnify the alleged tortfeasor for that liability. Consequently, if the insurer has any duty to this claimant, the present case asserts that claim prematurely.

Therefore, I concur in the judgment affirming the trial court's action, albeit for different reasons.