[Cite as *Inverness Gardens, L.L.C. v. Maher*, 2014-Ohio-3669.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HANCOCK COUNTY

INVERNESS GARDENS, LLC,

    PLAINTIFF-APPELLEE,

    v.                                       CASE NO. 5-13-39

LINDSEY MAHER,

    DEFENDANT-APPELLANT.
    -and-                                O P I N I O N

ROBERT W. MAURER, ET AL.

    DEFENDANTS-APPELLEES.

---

Appeal from Hancock County Common Pleas Court
Trial Court No. 11 CV 0218

Appeal Dismissed

Date of Decision: August 25, 2014

---

APPEARANCES:

    *Daniel F. Maynard* for Appellant

    *Scott T. Coon* for Appellee, Inverness Gardens, LLC

**ROGERS, J.**

{¶1} Defendant-Appellant, Lindsey Maher, appeals the judgment of the Court of Common Pleas of Hancock County, awarding Plaintiff-Appellee, Inverness Gardens, LLC ("Inverness"), money damages for unpaid rent and utilities. On appeal, Maher contends that the trial court erred by: (1) implying a rental agreement between Maher and Inverness; (2) failing to find that said rental agreement violated the statute of frauds; (3) not finding that Inverness failed to mitigate damages; (4) failing to require Inverness to pay court costs; (5) failing to award attorney fees to Maher; (6) failing to award compensation for additional hours worked by Maher in her employment with Inverness; and (7) improperly limiting Maher's ability to cross examine a witness. For the reasons that follow, we dismiss the appeal for lack of a final, appealable order.

{¶2} The following facts are not in dispute. Maher began working for Greenbrier, the parent company of Inverness, in 2007. In 2008, she became a manager and in March or April of 2009, she began working as a resident manager for Inverness and moved into one of the apartments on the property at a discounted rate. She never signed a lease for this apartment, but agreed to a monthly amount in rent and paid it regularly. In October of 2009, Maher moved to a second, smaller unit at Inverness and stayed there until September of 2010, when she was

fired as a resident manager. At no time did she pay rent for the second unit or have a written lease.

{¶3} On February 16, 2011, Inverness filed a complaint in the Findlay Municipal Court, alleging two claims against Maher: breach of her oral lease and fraud. Inverness sought damages in the amount of $14,900. On April 12, 2011, Maher filed her answer, which included counterclaims against Inverness and a cross-complaint[1] against two of its owners, Robert Maurer ("Robert") and Patricia Maurer ("Patricia") for failure to pay minimum wage, wrongful withholding of a paycheck, defamation, and abuse of process. Maher claimed damages in excess of $25,000. As this amount exceeded the jurisdictional limit of the Findlay Municipal Court, the matter was transferred to the Hancock County Court of Common Pleas on April 14, 2011.

{¶4} On May 2, 2011, Robert and Patricia filed a motion to dismiss them as parties, arguing that they could not be personally liable for the actions of Inverness. On August 1, 2011, Maher filed an amended answer, which added a claim of civil conspiracy and also asserted all of the claims against a new party,

---

[1] We note that the Ohio Rules of Civil Procedure do not have a provision regarding the filing of a cross-complaint. Instead, Maher asserted a counterclaim against Inverness and joined Robert and Patricia as defendants to the counterclaim under Civ.R. 13(H). "Parties may be dropped or added by order of the court on motion of any party * * *." Civ.R. 21. However, a party waives the defense of misjoinder when they do not raise the objection at the trial court level. *D.H. Overmyer Telecasting Co., Inc. v. Am. Home Assur. Co.*, 29 Ohio App.3d 31, 34 (8th Dist. 1986). Further, where a party is properly joined to an action a "mislabeling is of no substantive consequence." *ABN Amro Mtge. Group, Inc. v Arnold*, 2d Dist. Montgomery No. 20530, 2005-Ohio-925, ¶ 20. While Maher did not join the Maurer's by motion to the court, any argument of improper joinder was never raised and was therefore waived. As a result, the Maurers were properly joined, and the mislabeling of the action as a cross-complaint is inconsequential.

Elizabeth Maurer-Iott ("Elizabeth") (collectively with Robert and Patricia "the Maurers"). Inverness and the Maurers filed their answers to Maher's claims on August 23, 2011. The Maurers also filed a motion to dismiss them as defendants on August 23, 2011. On September 9, 2011, Maher filed a motion to dismiss the action against her, including an argument that the fraud claim against her was not plead with sufficient particularity as required under Civ.R. 9(B). On September 22, 2011, the trial court denied Maher's motion, and found that "fraud was pleaded with more than enough particularity in this matter * * *." (Docket No. 38, p. 3).

{¶5} On September 26, 2011, the trial court denied the Maurers' motion to dismiss them as parties. Specifically, the court stated that Maher had

> alleged, in her Cross-Claim,[2] that Robert A. Maurer, Patricia Maurer, and Elizabeth Iott acted as *individuals* while wrongfully withholding Defendant's last paycheck, failing to pay Defendant minimum wage, defaming Defendant, enacting a civil conspiracy against Defendant, and abusing the legal process to harm Defendant. As such, Cross-Defendants are not shielded from liability under R.C. 1705(B) and may be subject to liability dependent, of course on the facts later elicited.

(Emphasis sic.) (Docket No. 39, p. 2-3). The parties also filed numerous discovery motions that were ruled upon by the trial court.

---

[2] We note that Maher titled her action against the Maurers as a cross-complaint, and not a cross claim. Under the Ohio Rules of Civil Procedure, a cross claim is filed "by one party against a co-party * * * that is the subject matter either of the original action or of a counterclaim therein * * *." Civ.R. 13(G). The Maurers were not a co-party with Maher in the original action. Instead, Maher joined the Maurers as defendants to her counterclaim against Inverness under Civ.R. 13(H). However, we elect to keep intact the wording chosen by the trial court.

{¶6} On September 9, 2013, Maher dismissed Patricia and Elizabeth as parties and dismissed the abuse of process and civil conspiracy claims. Robert remained a party. That same day, the matter proceeded to a bench trial. Before opening statements, Maher notified the court of the voluntary dismissals that had been filed earlier that day. The court verified that Inverness and the Maurers had received those documents. No other issues were brought to the court's attention and all parties stated that they were ready to proceed on their claims. Inverness, after stating that it had no preliminary matters to address, discussed the fraud claim during opening statements.

{¶7} Inverness called Maher as its first witness and asked questions relating to both of its claims. Maher testified that part of her duties as a resident manager for Inverness included collecting rent and subsequently tracking rental payments on tenant cards and on a ledger sheet. If a person failed to pay their rent, they were left off of the ledger sheet, which only detailed information regarding payments. She was also required to create a rent roll, detailing whether each apartment was occupied or vacant. For the occupied apartments, the rent roll contained detailed information regarding the tenants, including their names as well as the amount of their monthly rent. Tenants appeared on the rent roll regardless of whether they paid rent for that month.

**{¶8}** Maher was asked whether she followed company policies and whether she collected rent from her friends living in the apartment complex. She was also asked whether she filled out tenant cards incorrectly and why she reported some people as delinquent to Inverness while failing to report others. She testified that she did have friends at the apartment complex and that she did not report some of these friends as delinquent to Inverness, but could not remember why. She also stated that she never accepted cash for rent, and that a tenant, Eric Sommers, had never paid rent for a townhouse he occupied on the property. Inverness next called Sommers, who testified that he had given rental payments in cash to Maher for the townhouse he occupied. He also testified that he had entered into a payment agreement with Inverness to pay back the rent that he owed.

**{¶9}** Lindsay Bauer was called as the next witness. She testified that she was Maher's friend. She also testified that she did not pay rent for almost a year, but that Maher had both notified her of her delinquency and stated that if she didn't pay rent she might be evicted. Bauer stated that "it was my mistake I didn't pay my rent." Trial Tr., Vol. I, p. 166. She also testified that she had entered into a payment plan with Inverness. Inverness then called Patricia to the stand, who testified as to how Maher was hired and trained. She also testified that she noticed discrepancies in the amount of money that Inverness was generating, and asked Elizabeth to investigate.

{¶10} Elizabeth then testified, providing greater detail as to the hiring and training of Maher. She testified that Maher had falsified records and not followed company procedures for collecting rent. As its last witness, Inverness called Robert to the stand, who testified as to company policies and that he "couldn't understand in my own mind why [Maher] would be giving apartments away to friends or not friends, and this many apartments." *Id.* at p. 245. He also testified that he had sent Maher a letter asking her to pay her rent or he may contact the prosecutor to investigate.

{¶11} As her first witness, Maher called David Maurer, another owner of Inverness, to the stand to rebut the fraud claims. Specifically, when Maher was asked by the trial court why she was reviewing other leases with the witness, she explained "in order to make a fraud charge, Your Honor, there has to be reasonable reliance." Trial Tr., Vol. II, p. 292. Maher also took the stand a second time to discuss her claims against the other parties. After her testimony, Maher rested.

{¶12} During closing statements, Inverness stated "[o]ur claim is focused and limited to the am ount of rent that she failed to pay us." *Id.* at p. 329. At the conclusion of the closing statement, the following dialogue took place:

> TRIAL COURT: [Inverness], you are proceeding on your fraud claim or not?

INVERNESS: No. We're in the process of collecting rent from a number of people. And so I think that is an ever changing number. There's no doubt in our mind that fraud was committed. Eric Sommers testified that she actually pocketed money that he gave her for rent. But that number is fluid. We just can't give you a number that I think the Court can trust in light of the fact that we continue to collect from the other people that did not pay rent. So we're simply asking for the rent that is owed us.

TRIAL COURT: Because that was going to be my question. [Maher] admitted to me that in fact she did falsify documents at her employment. And you have other evidence you've presented, which I haven't decided whether I believe or not believe. I have to go through credibility assessment. But let's just assume for the sake of argument some of the basic elements of fraud that you've established. The issue that I wrote down that I was going [to] ask you was, because of the unique nature of this case, as you mentioned, the efforts to collect against these other peoples [sic], that your mitigation efforts make it difficult for me to assess what damages that [Maher] might have owed you if in fact she committed fraud. So you're going to attempt to collect that through these other cases and you don't want me to decide whether or not she committed fraud then.

INVERNESS: That is correct, Your Honor. I think the Court may need to make that decision in considering [Maher's] action for defamation.

*Id.* at p. 332-333.

In response to this dialogue, Maher asked:

MAHER: Just to be clear, Your Honor, is the fraud claim being withdrawn? Is that what I am hearing or no?

INVERNESS: As I indicated, it's part of our defense. I don't know if I can withdraw it, but indicating to the Court that we're not requesting the Court award us any damages.

TRIAL COURT: All right.

INVERNESS: So I believe the Court can actually find that she defrauded us, but award us no damages.

TRIAL COURT: Well I guess I could if I was required to analyze the evidence I could, but ultimately you wouldn't prevail on your cause of action, but yes, that's possible. All right.

*Id.* at p. 334.

{¶13} When discussing the fraud claim during closing statements, Maher was interrupted by the trial court, which stated:

TRIAL COURT: [Maher], I think [Inverness has] withdrawn that.

MAHER: I believe they said they wanted to go forward with the fraud as a cause of action as approved. I don't think they could make the fraud claim in any regard, Your Honor. I don't mean to overly hash it. I did write this out last night.

TRIAL COURT: I thought [Inverness] - -

MAHER: I will move past it, Your Honor.

*Id.* at p. 342-343.

After closing arguments, and before ruling, the trial court stated

as I understand it, the issues you'd like me to resolve, [Inverness], would be count one of your claim. The rents due there. And you wanted me to consider the issues of fraud, not to pursue damages, but to - - but as in consideration of a defense that you would be raising to [Maher's] claims, correct?

INVERNESS: Yes.

TRIAL COURT: And [Maher], * * * [y]ou're asking me then to reject, which I believe they've withdrawn technically the fraud claim as it relates to your client.

*Id.* at p. 356-357. The court then left the record open to allow the parties to brief the issue regarding Maher's wage claims.

{¶14} The trial court journalized a decision on October 1, 2013, detailing its conclusions of law and describing the attendant facts. On October 7, 2013, Maher moved the court to "issue, in writing, conclusions of fact separately from the conclusions of law * * *." (Docket No. 92, p. 1). The trial court denied the motion on October 11, 2013. On November 21, 2013, the trial court issued its judgment entry, which incorporated its prior journalized decision (collectively "judgment entry").

{¶15} In the introduction to its judgment entry, the trial court stated that the "matter comes before the court for ruling on a complaint filed by the Plaintiff Inverness Gardens and a counterclaim and cross-claim filed by the Defendant Linsday Maher." (Docket No. 91, p.1). The entry states that the complaint filed by Inverness "alleges that Maher, a resident manager at Inverness, failed to pay rent and committed acts of fraud." (Docket No. 91, p. 1). The entry goes on to state that "[a]fter the parties presented the evidence [Inverness] advised the Court that it was no longer seeking damages on its fraud claim, but still wished to use the evidence of Maher's fraudulent conduct as a defense to Maher's counterclaim for defamation." (*Id.* at p. 2).

{¶16} As its conclusions of law, the entry specifically addresses back rent, utilities, and unit expenses, all in regards to the claim by Inverness of breach of an oral lease. The fraud claim is not discussed. When discussing Maher's defamation claim, the trial court stated

> there is sufficient evidence on the record to conclude that Maher had poor job performance at Inverness and that Maher's conduct violated company policy. Maher has admitted to her poor job performance, falsifying tenant cards, failing to report delinquent tenants, and failing to pay rent. Despite there being no record of written company policies which would bind Maher there is no doubt that such conduct would be violative of company policy.

(*Id.* at p. 7). While additional reasons for why the defamation claim failed were discussed, none of them were related to fraud. Further, while the entry states that Robert wrote one of the allegedly defamatory letters, the claim was only discussed as being against Inverness, and not as to Robert individually.

{¶17} The trial court then found that Maher had proven her minimum wage and withholding a paycheck claims. As part of the recovery for a minimum wage claim, Maher was entitled to liquidated damages and attorney fees. However, the court found that Maher had failed to provide the proper evidence required to establish the amount of her attorney fees, and thus was not entitled to recover them. Again, this entire claim was discussed in relation to Inverness, without mentioning Robert.

{¶18} In its conclusion, the trial court calculated the amounts that Inverness was entitled to as back rent from Maher. Further, it stated that "Maher has proven by a preponderance of the evidence that she was entitled to wages for hours worked for which she was not compensated in the amount of $105.00." (*Id.* at p. 15). The decision, however, does not state whether it is Inverness that is liable for this amount or Robert. The decision also states the amount that Maher was entitled to for her other wage claims, and specifies that these are against Inverness. It went on to calculate the set offs that each party was entitled to, and again denied Maher's attorney fees for the minimum wage claim. The court found that "[s]ince each party has a prevailing claim in this matter, the Court finds that costs should be divided equally between the parties." (*Id.* at p. 16). The judgment entry stated that "THIS IS A FINAL APPEALABLE ORDER." (Emphasis sic.) (Docket No. 94, p. 2).

{¶19} It is from this judgment that Maher timely filed this appeal, presenting the following assignments of error for our review.

### *Assignment of Error No. I*

**THE TRIAL COURT ERRED IN FINDING SUFFICIENT EVIDENCE TO IMPLY A CONTRACT BETWEEN APPELLANT MAHER AND APPELLEE INVERNESS GARDENS LLC WHERE NO EVIDENCE OF DURATION OR OTHER ESSENTIAL TERMS WAS PRESENTED.**

*Assignment of Error No. II*

**THE TRIAL COURT ERRED IN FINDING AN ORAL LEASE BETWEEN APPELLEE AND APPELLANT AND FAILING TO ALSO FIND THAT ANY SUCH ORAL AGREEMENT VIOLATED THE STATUTE OF FRAUDS.**

*Assignment of Error No. III*

**THE TRIAL COURT ERRED IN FAILING TO FIND APPELLEE INVERNESS GARDENS FAILED TO MITIGATE THEIR DAMAGES WHERE APPELLANT NEVER MADE ANY RENTAL PAYMENTS TO INVERNESS AND APPELLEE INVERNESS WAS IN POSSESSION OF THE RECORDS DEMONSTRATING APPELLANT'S FAILURE TO PAY ANY RENTAL PAYMENTS.**

*Assignment of Error No. IV*

**THE TRIAL COURT ERRED IN FAILING TO ORDER APPELLEE INVERNESS GARDENS LLC AND ROBERT MAURER TO PAY APPELLANT LINDSEY MAHER'S COURT COSTS WHERE MAHER'S COSTS WERE SIGNIFICANTLY MORE THAN HALF THE OVER-ALL COURT COSTS AND APPELLEE ROBERT MAURER HAD NO PREVAILING CLAIM.**

*Assignment of Error No. V*

**THE TRIAL COURT ERRED IN FAILING TO ORDER APPELLEE INVERNESS GARDENS LLC AND ROBERT MAURER TO PAY APPELLANT LINDSEY MAHER'S REASONABLE ATTORNEY FEES OR IN THE ALTERNATIVE TO ORDER A SEPARATE HEARING REGARDING ATTORNEY FEES FOLLOWING THE ESTABLISHMENT OF LIABILITY ON THE WAGE CLAIM WHERE APPELLANT TESTIFIED THAT SHE HAD INCURRED ATTORNEY FEES AND COSTS IN PURSUIT OF HER WAGE CLAIMS AGAINST INVERNESS.**

*Assignment of Error No. VI*

**THE TRIAL COURT ERRED IN FAILING TO FIND APPELLANT MAHER PRESENTED SUFFICIENT EVIDENCE TO ESTABLISH ADDITIONAL UNCOMPENSATED HOURS WORKED WERE APPELLEE KNEW OR SHOULD HAVE KNOWN OF THE HOURS APPELLANT MAHER WAS WORKING IN ADDITION TO THOSE PAID.**

*Assignment of Error No. VII*

**THE TRIAL COURT ERRONEOUSLY LIMITED THE CROSS-EXAMINATION OF INVERNESS MEMBER, DAVID MAURER BY PREVENTING MAHER FROM THOROUGHLY CROSS EXAMINING DAVID MAURER INCLUDING ABOUT REPRESENTATIONS MADE TO OTHER COURTS THAT LEASES EXIST WHICH DID NOT.**

{¶20} Before addressing the assignments of error, we must determine whether we have subject matter jurisdiction to address the issues raised on appeal. "A demonstration of a lack of subject-matter jurisdiction is fatal to any action * * *." *Bunting v. Estate of Bunting*, 5th Dist. Stark Nos. 2008CA00173, 2008CA00199, 2009-Ohio-3136, ¶ 13. While not raised by either party, the issue of subject-matter jurisdiction may be raised, sua sponte, by a court at any stage in the proceeding, and for the first time on appeal. *Fox v. Eaton Corp.*, 48 Ohio St.2d 236, 238 (1976), *overruled on other grounds by Manning v. Ohio State Library Bd.*, 62 Ohio St.3d 24 (1991), paragraph one of the syllabus; *see also Cathey v. Cassens Transport Co.*, 3d Dist. Union No. 14-99-35, 2000 WL 126654,

*5 (Feb. 4, 2000). Appellate courts are "bound to raise any jurisdictional questions not raised by the parties." *Levinsky v. Boardman Twp. Civ. Serv. Comm.*, 7th Dist. Mahoning No. 04 MA 36, 2004-Ohio-5931, ¶ 26; *see also State v. Stults*, 195 Ohio App.3d 488, 2011-Ohio-4328, ¶ 11 (3d Dist.). The Ohio Court of Appeals is only vested with subject matter jurisdiction over final and appealable orders. Ohio Constitution, Article IV, Section 3(B)(2). Therefore, before we can reach the merits of Maher's assignments of error, we must determine whether the trial court's judgment entry is a final, appealable order.

{¶21} "An order of a court is a final appealable order only if the requirements of both R.C. 2505.02 and, if applicable, Civ.R. 54(B), are met." *State ex rel. Scruggs v. Sadler*, 97 Ohio St.3d 78, 2002-Ohio-5315, ¶ 5.

> Civ.R. 54(B) applies in multiple-claim or multiple-party actions where fewer than all the claims or fewer than all the parties are adjudicated. If a court enters final judgment as to some but not all of the claims and/or parties, the judgment is a final appealable order only upon the express determination that there is no just reason for delay.

*General Acc. Ins. Co. v. Ins. Co. of North America*, 44 Ohio St.3d 17, 22 (1989). Without this determination, a judgment that addresses fewer than all claims is not a final appealable order. *Gruber v. Cheney*, 3d Dist. Marion No. 9-10-16, 2010-Ohio-2827, ¶ 22. While the judgment entry in the case sub judice states that the decision is a final appealable order, it does not contain a determination that there is

no just reason for delay. Therefore, if the judgment entry disposes of fewer than all of the claims, it is not a final appealable order.

*Fraud Claim*

**{¶22}** The judgment entry states that Inverness wished not to proceed on damages for fraud, but that the claim would be considered as a defense to Maher's defamation claim. However, Inverness's complaint alleged two causes of action: breach of contract and fraud. Whether *evidence* of fraud constituted a defense against Maher's defamation claim does not otherwise eliminate fraud as a *claim for relief*. Each separate claim for relief must be addressed for a judgment entry to be a final appealable order. While the decision discusses Maher's allegedly fraudulent conduct in its analysis of the defamation claim, nothing in the decision acted as an adjudication of the merits of the fraud claim. Therefore, the fraud claim is still pending unless it was otherwise properly dismissed.

**{¶23}** "The commencement of trial cuts off a plaintiff's ability to unilaterally dismiss claims without prejudice." *Schwering v. TRW Vehicle Safety Sys., Inc.*, 132 Ohio St.3d 129, 2012-Ohio-1481, ¶ 21. "A plaintiff may still request a dismissal during trial but may not do so unilaterally." *Id.* at ¶ 22. A claim can only be withdrawn after a trial commences by stipulation of all of the parties or by a motion for a court ordered dismissal pursuant to Civ.R. 41(A)(2). *Id.* at ¶ 22; *Chadwick v. Barba Lou, Inc.*, 69 Ohio St.2d 222, 229 (1982). If the

withdrawal is by motion, the trial court will "determine the conditions to impose to protect the other parties and to ensure that they are not prejudiced upon refiling." *Schwering* at ¶ 22.

{¶24} Here, while Maher dismissed several claims before the trial commenced, Inverness did not. Inverness argued the fraud claim at trial, calling witnesses to specifically testify as to the facts of the allegation. Therefore, Inverness could only withdraw its fraud claim by stipulation of the parties or by motion to the court. While Inverness notified the court that it wanted to withdraw its fraud claim at the close of evidence, it did so without agreement by Maher. Indeed, when Maher asked for clarification as to how Inverness was proceeding, Inverness stated that it did not believe that it could withdraw the claim, and instead encouraged the court to make a finding that Maher committed fraud but not award damages. When Maher subsequently gave closing arguments regarding the fraud claim, she disputed the statement by the court that the claim had been withdrawn. Thus, there is no evidence that the parties agreed to dismiss the claim by stipulation, or that Maher was even aware that Inverness wanted the claim dismissed.

{¶25} Nor did Inverness move to withdraw the claim. Indeed, when asked to clarify whether it was proceeding on the fraud claim, Inverness admitted that it did not believe the claim could be withdrawn. Even if there were a motion to

dismiss by Inverness, the trial court never made clear that it was granting the motion, as it continued to entertain whether it could rule on the fraud without awarding damages. While the trial court stated that it believed that Inverness had technically withdrawn the fraud claim when discussing final matters after closing arguments, it never stated that it was a result of granting a motion to dismiss. Instead, the trial court's statements indicate that Inverness had unilaterally withdrawn the claim, which could not occur once trial had started.

{¶26} Further, even if the judge's comments after closing arguments can be considered a grant of a motion to dismiss, the judgment entry does not state that the fraud claim was dismissed. As this court has noted, "it is well established that a trial court speaks only through its journal entries and not by oral pronouncement." *Johnson v. Johnson*, 194 Ohio App.3d 664, 2011-Ohio-3001, ¶ 16 (3d Dist.). As a result, "an oral pronouncement is not recognized as an action of a court unless it is entered upon the journal." *Id.* While the judgment entry mentions the fraud claim, it neither rules upon the claim nor states that it was dismissed. Further, there is no other journalized entry regarding the fraud claim in the record.

{¶27} With no stipulation by the parties to dismiss the claim, no motion to dismiss the claim, and no journalized entry dismissing or ruling on the claim, the

fraud claim was never adjudicated in this case, and is still pending before the court.

*Claims against Robert*

**{¶28}** A judgment entry must address any claims against other parties raised by a defendant to be considered a final, appealable order. *State ex rel. Collier v. Farley*, 4th Dist. Lawrence No. 05CA4, 2005-Ohio-4204, ¶ 18; *Phillips v. Boston*, 3d Dist. Marion No. 9-77-09, 1977 WL 199591, *1 (Aug. 5, 1977). Here, Maher asserted claims against Robert personally. While Robert moved to be dismissed as a party, the trial court denied the motion. Further, though Maher dismissed Patricia and Elizabeth as parties, she did not dismiss Robert. While the trial court's judgment entry mentions cross claims, it does not discuss any of Maher's claims against Robert personally, only those against Inverness. As a result, all of the claims raised by Maher against Robert are still pending before the court.

**{¶29}** By not addressing the fraud claim or Maher's claims against Robert, the court's decision acted as an adjudication of less than all of the claims in the action. Therefore, we lack jurisdiction to review this case.

**{¶30}** Accordingly, for the forgoing reasons, the appeal is dismissed.

***Appeal Dismissed***

**WILLAMOWSKI, P.J. and PRESTON, J., concur.**

**/jlr**