[Cite as *Inverness v. Maher*, 2015-Ohio-3816.]


# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HANCOCK COUNTY


INVERNESS GARDENS, LLC,

    PLAINTIFF-APPELLEE,

    v.                              CASE NO.  5-15-16

LINDSEY MAHER,

    DEFENDANT-APPELLANT,

    v.                              O P I N I O N

ROBERT W. MAURER, ET AL.

    DEFENDANTS-APPELLEES.


**Appeal from Hancock County Common Pleas Court**
**Trial Court No. 2011-CV-218**

**Judgment Affirmed**

**Date of Decision:    September 21, 2015**


APPEARANCES:

    *Patricia F. Lowery*  for Appellant

    *Scott T. Coon*  for Appellee, Inverness Gardens, LLC

**SHAW, J.**

{¶1} Defendant–appellant Lindsey Maher ("Maher") brings this appeal from the April 3, 2015, judgment of the Hancock County Common Pleas Court awarding plaintiff–appellee, Inverness Gardens, LLC ("Inverness"), money damages for unpaid rent.

{¶2} The facts relevant to this appeal are as follows. Maher began working for Greenbriar, the parent company of Inverness, in August of 2007. Greenbriar was characterized as "a management company" that oversaw a number of real estate properties located all over northwest Ohio. While working for Greenbriar, Maher collected rent from various rental properties and assisted people in filling out rental applications.

{¶3} In 2008, Maher became a manager and in March or April of 2009, she began working as a resident manager for Inverness. Inverness was characterized as a limited liability company owning an apartment complex in Findlay, Ohio, which contains approximately 100 rental units. As a resident manager for Inverness, Maher moved into one of the Inverness apartments at a discounted rate. She never signed a lease for the apartment, but agreed to a monthly amount in rent and paid it regularly. In October of 2009, Maher moved to a second, smaller unit at Inverness and stayed there until September 13, 2010, when she was fired as a

resident manager. At no time did Maher pay rent for the second unit or have a written lease.

{¶4} On February 16, 2011, Inverness filed a complaint in the Findlay Municipal Court, alleging two claims against Maher: breach of her oral lease and fraud. Inverness sought damages in the amount of $14,900. (Doc. No. 7).

{¶5} On April 12, 2011, Maher filed her answer, which included counterclaims against Inverness and a cross-complaint[1] against two of its owners, Robert Maurer ("Robert") and Patricia Maurer ("Patricia") for failure to pay minimum wage, wrongful withholding of a paycheck, defamation, and abuse of process. Maher claimed damages in excess of $25,000. Maher also requested that she receive attorney's fees, particularly those related to the wage claims. As the amount of Maher's counterclaim exceeded the jurisdictional limit of the Findlay Municipal Court, the matter was transferred to the Hancock County Common Pleas Court on April 14, 2011. (Doc. No. 8).

{¶6} On May 2, 2011, Robert and Patricia filed an answer denying Maher's claims, and they also filed a motion to dismiss them as parties, arguing that they could not be personally liable for the actions of Inverness. (Doc. Nos. 15, 16).

---

[1] As we noted when this Court dismissed Maher's prior appeal for lack of a final appealable order, the Ohio Rules of Civil Procedure do not have a provision regarding the filing of a cross-complaint. *See Inverness Gardens v. Maher*, 3d Dist. Hancock No. 5-13-39, 2014-Ohio-3669, at fn 1. Instead, Maher asserted a counterclaim against Inverness and joined Robert and Patricia as defendants to the counterclaim under Civ.R. 13(H). *Id*. However, as we noted in our prior dismissal, where a party is properly joined to an action a "mislabeling is of no substantive consequence." *ABN Amro Mtge. Group, Inc. v Arnold*, 2d Dist. Montgomery No. 20530, 2005-Ohio-925, ¶ 20.

Also on May 2, 2011, Inverness filed its answer denying Maher's claims and asserting a number of affirmative defenses. (Doc. No. 17).

{¶7} On August 1, 2011, Maher filed an amended answer, which added a claim of civil conspiracy and also asserted all of the claims against a new party, Elizabeth Maurer-Iott ("Elizabeth") (collectively with Robert and Patricia "the Maurers"). (Doc. No. 25). Inverness and the Maurers filed their answers to Maher's claims on August 23, 2011. (Doc. Nos. 31, 32). The Maurers also filed a motion to dismiss them as defendants on August 23, 2011. (Doc. No. 33).

{¶8} On September 9, 2011, Maher filed a motion to dismiss the action against her, including an argument that the fraud claim against her was not plead with sufficient particularity as required under Civ.R. 9(B). (Doc. No. 36). On September 22, 2011, the trial court denied Maher's motion, and found that "fraud was pleaded with more than enough particularity in this matter * * *." (Doc No. 38).

{¶9} On September 26, 2011, the trial court denied the Maurers' motion to dismiss them as parties. (Doc. No. 39).

{¶10} On October 4, 2011, Maher was deposed. The litigation then proceeded further through discovery. Numerous discovery motions were filed and ruled upon by the trial court. The parties also proceeded unsuccessfully through mediation, and the matter was set for a bench trial.

{¶11} On the day of the scheduled bench trial, September 9, 2013, Maher dismissed Patricia and Elizabeth as parties and dismissed her abuse of process and civil conspiracy claims. (Doc. No. 85). Robert remained a party. (*Id*.)

{¶12} The case then proceeded to a bench trial. At trial, Inverness called Maher as its first witness and asked questions relating to both of its claims. Maher testified that part of her duties as a resident manager for Inverness included collecting rent and subsequently tracking rental payments on tenant cards and on a ledger sheet. If people failed to pay their rent, they were left off of the ledger sheet, which only detailed information regarding payments. Maher was also required to create a rent roll, detailing whether each apartment was occupied or vacant. For the occupied apartments, the rent roll contained detailed information regarding the tenants, including their names as well as the amount of their monthly rent. Tenants appeared on the rent roll regardless of whether they paid rent for that month.

{¶13} Maher was asked whether she followed company policies and whether she collected rent from her friends living at Inverness. She was also asked whether she filled out tenant cards incorrectly and why she reported some people as delinquent to Inverness while failing to report others. Maher testified that she did have friends at the apartment complex and that she did not report some of these friends as delinquent to Inverness, but could not remember why.

She also stated that she never accepted cash for rent, and that a tenant, Eric Sommers, had never paid rent for a townhouse he occupied at the Inverness property.

{¶14} In addition, Maher testified that she incorrectly included her friend, Lindsay Bauer, as having made payments on Bauer's tenant card that Bauer never actually made. However, Maher testified that the tenant cards were kept in her office and were never sent to Maher's superiors and thus the improper entries were only discovered once the tenant cards were later looked at. The ledger sheets, which showed who had actually made payments, *were* sent to Maher's superiors, and did not contain similar incorrect payment information for Bauer.

{¶15} As to Inverness's claim for back-rent, Maher testified that she never had a written lease with Inverness. Maher testified that the first apartment she stayed in at Inverness, 934J, she paid rent for at a discounted rate due to her employment. Maher testified that in late September 2009/early October 2009, she moved into apartment 934L, a smaller unit across the hall from her prior unit. Maher was in apartment 934L until the time she was fired, September 13, 2010.

{¶16} Maher testified that she never paid rent on apartment 934L because she was never told how much to pay for the apartment. Maher further testified that she did not pay because she did not believe she had to and thought it was part

of her compensation. Maher indicated, however, that she would have paid if she was told how much to pay.

**{¶17}** In addition, Maher was shown the rent roll for a time when she occupied unit 934L, which had a rent figure of $400 per month written in, which would have reflected the same discount she received on her prior apartment. Although Maher was the one who created these rent rolls, she testified that she did not fill out the $400 per month figure, and she did not know how it had gotten on the rent roll.

**{¶18}** Regarding Maher's claims for Inverness failing to pay minimum wage and wrongful withholding of a paycheck, Maher testified that she typically filled out a time sheet and submitted it every Thursday. Maher testified that she worked eight hours on Friday September 10, 2010, and approximately two hours on Monday September 13, 2010, before she was fired that morning. Maher testified that she was never compensated for those ten hours.[2] In addition, Maher also stated that she would regularly drive from Inverness in Findlay to the main office in Bowling Green to pick up paychecks and drop off documents. Maher testified that she should have been compensated for that driving time as well, though she admitted she had never put that time on her time card, and that she was going to Bowling Green anyway to pick up her paychecks.

---

[2] Maher indicated her hourly rate while working for Inverness was $10.50.

{¶19} Inverness next called Eric Sommers, who testified that at one point he had lived with Maher in one of the apartments at Inverness, but eventually they took separate apartments. Sommers testified that he had given rental payments in cash to Maher for the townhouse he occupied while at Inverness. He also testified that he had entered into a payment agreement with Inverness to pay back the rent that he owed that Inverness had never received.

{¶20} Lindsay Bauer was called as the next witness. She testified that she was Maher's friend during the time they both resided at Inverness. Bauer also testified that she did not pay rent for almost a year while at Inverness, but that Maher had both notified her of her delinquency and stated that if Bauer did not pay rent she might be evicted. Bauer stated that "it was my mistake I didn't pay my rent." (Trial Tr. at 166). Bauer also testified, similar to Sommers, that she had entered into a payment plan with Inverness to pay back the rent she had not previously paid.

{¶21} Inverness then called Patricia Maurer to the stand. Patricia testified as to how Maher was hired and trained. Patricia testified that after Maher had done a good job working with Greenbriar, Maher moved to Inverness to be the resident manager. Patricia testified that she first noticed problems with Maher's management of Inverness in June or July of 2010 when she realized the accounts for Inverness were low. (Tr. at 174-175). Patricia also testified that when she

noticed discrepancies in the amount of money that Inverness was generating she asked Elizabeth Maurer-Iott to investigate.

{¶22} Elizabeth Maurer-Iott then testified, providing greater detail as to the hiring and training of Maher. She testified that Maher had falsified records and not followed company procedures for collecting rent. Elizabeth also testified that while she did not have Maher sign a written lease, she and Maher had specifically agreed for Maher to pay $400 per month in rent for the 934L apartment, reflecting the same discount Maher had received on her prior apartment at Inverness.

{¶23} As its last witness, Inverness called Robert Maurer to the stand, who testified as to company policies and that he "couldn't understand in [his] own mind why [Maher] would be giving apartments away to friends or not friends, and this many apartments." (Tr. at 245). He also testified that he had sent Maher a letter asking her to pay her rent or he may contact the prosecutor to investigate. At the conclusion of Robert's testimony, Inverness entered its exhibits into evidence and rested its case.

{¶24} Maher then proceeded to her case-in-chief and first called David Maurer, another manager of Inverness who also served at one time as Inverness's counsel. David was called to the stand to rebut the fraud claims against Maher and establish that Inverness had never reasonably relied on any of the discrepancies resulting from Maher's management.

{¶25} Maher then took the stand a second time. Maher disputed the testimony of Eric Sommers, testifying that while she and Sommers had lived together, he paid her his share of rent in cash but Eric had never paid cash for the townhouse he resided in on his own after Maher moved out.

{¶26} Maher was also presented with a bill prepared by her attorney reflecting attorney fees related to this case, specifically regarding the wage claims. Maher acknowledged that she was paying a "discounted rate" of $175 an hour to her attorney, and that her attorney stated he had expended the listed hours in pursuit of Maher's wage claim. The attorney's bill was entered into evidence. At the conclusion of her testimony, Maher rested.

{¶27} The parties then proceeded to closing arguments and the trial court left the record open for written briefs regarding Maher's wage claims and the law related to them. Both parties submitted briefs on September 19, 2013. (Doc. Nos. 89, 90).

{¶28} On October 1, 2013, the trial court filed a 16-page decision on the matter. After making factual and legal findings, the trial court concluded that Inverness had proven by a preponderance of the evidence that it was entitled to rent and damages to the apartment from Maher in the total amount of $5,068.33. (Doc. No. 91). The trial court also concluded that Maher had proven by a preponderance of the evidence that she was entitled to wages for hours worked for

which she was not compensated in the amount of $105.00. Further, the trial court found that Maher was entitled to additional liquidated damages of $200.00 as a result of Inverness's failure to pay Maher's wages within 30 days, and damages of $210.00 pursuant to Article II, section 34a of the Ohio Constitution, for a total award of $515.00. (*Id.*) However, the court found that Maher had failed to provide the proper evidence required to establish the amount of her attorney fees related to the wage claims, and thus was not entitled to recover them. The trial court found that Maher was entitled to a set-off of $700.00 for two money orders she had sent to Inverness as part of a failed settlement prior to the trial. Thus the trial court ultimately determined that Maher owed Inverness a net judgment in the amount of $3,853.33. (*Id.*)

{¶29} On October 7, 2013, Maher made a motion for findings of fact and conclusions of law, which was overruled on October 11, 2013 by the trial court. (Doc. Nos. 92, 93). In overruling the motion, the trial court stated that it had made extensive findings of fact and conclusions of law in its decision.

{¶30} On November 21, 2013, a judgment entry was issued purporting to journalize the findings made in the October 1, 2013 decision into a final judgment. The November 21, 2013, judgment entry was appealed to this Court in *Inverness Gardens v. Maher*, 3d Dist. Hancock No. 5-13-39, 2014-Ohio-3669. This Court dismissed Maher's appeal for lack of a final appealable order, finding that the trial

court's judgment entry did not dispose of Inverness's fraud claim against Maher, or of Maher's defamation claim against Robert individually. *Maher* at ¶ 28.

**{¶31}** After this Court dismissed Maher's appeal, Maher then filed a "Motion for Hearing for Attorney Fees Regarding Wage Claims." (Doc. No. 108). The motion argued that plaintiff's counsel had submitted attorney fees up to the time of trial but additional fees had been incurred throughout the trial and while briefing the law regarding wage claims. (*Id.*)

**{¶32}** Inverness then filed a motion requesting a final judgment based on the evidence already presented at the trial. (Doc. No. 112). Maher opposed this motion, arguing that this case did not allow for a *nunc pro tunc* entry. (Doc. No. 113).

**{¶33}** On December 19, 2014, the trial court held a hearing to allow the parties to make final arguments on the outstanding issues that were not finalized in its prior judgment entry. At that time, Inverness withdrew its Fraud claim against Maher, leaving the only outstanding issue Maher's defamation claim against Robert Maurer individually. The parties made closing arguments on this issue, based on the evidence presented at trial. After the closing arguments, Maher attempted to call another attorney to the stand to testify as to attorney fees in this case related to the wage claim. The trial court determined that Maher could not call the attorney, stating that Maher already had her opportunity to properly

present evidence as to attorney's fees at the trial on this matter, and that Maher had failed to do so. The trial court stated that the determination on the outstanding issues did not allow Maher to reopen other issues that had already been decided.

{¶34} The trial court did allow Maher to proffer the testimony of Mark Owen, a litigation attorney on the reasonableness and necessity of the fees regarding the wage claim. At the conclusion of the hearing, the trial court stated that it would leave the record open for the parties to file briefs on the issue of whether the attorney's fees must be addressed.

{¶35} On January 15, 2015, Maher filed a "Brief in Support of Lack of Final Judgment" arguing that the attorney's fee issue was not *res judicata* as this Court never took jurisdiction. (Doc. No. 116). On January 16, 2015, Inverness filed a response. (Doc. No. 117).

{¶36} On January 26, 2015, the trial court filed a decision addressing the issues that had not been addressed in its prior entry, which had been appealed and dismissed. The trial court determined that Inverness voluntarily dismissed its fraud claim and that in any event Inverness failed to prove any damages associated with the fraud claim and thus was not entitled to judgment. (Doc. No. 119). The trial court then addressed Maher's outstanding defamation claim against Robert Maurer individually and determined that Maher failed to prove her claim. (*Id.*) Next, the trial court addressed Maher's attorney fee arguments and found that

Maher had failed to establish at trial the "lodestar"[3] number required under *Bittner v. Tri-Cty. Toyota, Inc.*, 58 Ohio St.3d 143, 146 (1991). The trial court thus found that there was no credible testimony about the reasonableness and necessity of the fees incurred and that counsel could not later attempt to reopen that issue to correct its prior failings. (*Id.*)

**{¶37}** On April 3, 2015, the trial court issued a final judgment entry memorializing its findings from its original entry that this Court determined was not final, and its findings in its January 26, 2015 decision, which disposed of the remaining claims. (Doc. No. 122). It is from this judgment that Maher appeals, asserting the following assignments of error for our review.

**ASSIGNMENT OF ERROR 1**
**THE TRIAL COURT ERRED IN DETERMINING THAT THE JUDGMENT ENTRY FILED NOVEMBER 21, 2013, WHICH WAS NOT FINAL AS TO ALL PARTIES, WAS FINAL AS TO SOME OF THE PARTIES AND CLAIMS AND, THEREFORE, RES JUDICATA ATTACHED TO THOSE CLAIMS.**

**ASSIGNMENT OF ERROR 2**
**THE TRIAL COURT ERRED IN DETERMINING THAT APPELLANT MAHER HAD NOT PRESENTED EVIDENCE OF WAGE CLAIM-BASED ATTORNEY FEES, DURING THE TRIAL, DESPITE THE UNCHALLENGED TESTIMONY OF THE EMPLOYEE AS TO THE DELINEATED ATTORNEY FEE BILL FOR THE WAGE**

---

[3] "Lodestar" has been defined as, "[a] reasonable amount of attorney's fees in a given case, [usually] calculated by multiplying a reasonable number of hours worked by the prevailing hourly rate in the community for similar work, and often considering such additional factors as the degree of skill and difficulty involved in the case, the degree of its urgency, its novelty, and the like." *Black's Law Dictionary*, 10th Ed.2014); *see also Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546 106 S.Ct. 3088 (1986).

**CLAIM FEES, WHICH FEE BILL WAS ADMITTED AS EVIDENCE WITHOUT OBJECTION AND WITH NO FINDING THAT THE NUMBER OF HOURS AND/OR HOURLY RATE WAS UNREASONABLE.**

**ASSIGNMENT OF ERROR 3**
**THE TRIAL COURT ERRED IN DENYING APPELLANT-EMPLOYEE'S OCTOBER 2014 MOTION FOR ATTORNEY FEES WHEN THE MOTION WAS MADE AFTER TRIAL AND BEFORE THE EXISTENCE OF A FINAL APPEALABLE ORDER, BASED UPON THE ASSERTION OF RES JUDICATA, BECAUSE APPELLANT HAD FILED AN INTERIM APPEAL, WHICH WAS DISMISSED FOR LACK OF A FINAL APPEALABLE ORDER.**

**ASSIGNMENT OF ERROR 4**
**THE TRIAL COURT ERRED IN FAILING TO FIND APPELLANT MAHER PRESENTED SUFFICIENT EVIDENCE TO ESTABLISH ADDITIONAL UNCOMPENSATED HOURS WORKED WHERE APPELLEE KNEW OR SHOULD HAVE KNOWN OF THE HOURS APPELLANT MAHER WAS WORKING IN ADDITION TO THOSE PAID.**

**ASSIGNMENT OF ERROR 5**
**THE TRIAL COURT ERRED IN OFFSETTING ANY JUDGMENT OWED TO APPELLEE-PLAINTIFFS WITH THE WAGES AND PENALTIES OWED FROM APPELLEE-PLAINTIFFS TO APPELLANT-DEFENDANT, RATHER THAN ORDERING THE PAYMENT OF SAME WITHIN THIRTY (30) DAYS OF THE JUDGMENT ENTRY.**

**ASSIGNMENT OF ERROR 6**
**THE TRIAL COURT ERRED IN FINDING SUFFICIENT EVIDENCE TO IMPLY A CONTRACT BETWEEN APPELLANT MAHER AND APPELLEE INVERNESS GARDENS WHERE NO EVIDENCE OF DURATION OR OTHER ESSENTIAL TERMS WAS PRESENTED.**

## ASSIGNMENT OF ERROR 7

**THE TRIAL COURT ERRED IN FINDING AN ORAL LEASE BETWEEN APPELLEE AND APPELLANT AND FAILING TO ALSO FIND THAT ANY SUCH ORAL AGREEMENT VIOLATED THE STATUTE OF FRAUDS.**

## ASSIGNMENT OF ERROR 8

**THE TRIAL COURT ERRED IN AWARDING DAMAGES TO INVERNESS ON A CONTRACT THEORY OF RECOVERY UNDER AN ORAL LEASE, BEYOND A THIRTY (30) DAY TENANCY AND THIRTY (30) DAY NOTICE PERIOD, WHERE THERE IS NO EVIDENCE OF AN AGREEMENT AS TO THE DURATION OF SAID CONTRACT.**

## ASSIGNMENT OF ERROR 9

**THE TRIAL COURT ERRED IN FAILING TO FIND THAT APPELLEE INVERNESS GARDENS FAILED TO MITIGATE THEIR DAMAGES WHERE APPELLANT NEVER MADE ANY RENTAL PAYMENTS TO INVERNESS AND APPELLEE INVERNESS WAS IN POSSESSION OF THE RECORDS DEMONSTRATING APPELLANT'S FAILURE TO PAY ANY RENTAL PAYMENTS.**

## ASSIGNMENT OF ERROR 10

**THE TRIAL COURT ERRONEOUSLY LIMITED THE CROSS-EXAMINATION OF INVERNESS MEMBER, DAVID MAURER BY PREVENTING MAHER FROM THOROUGHLY CROSS-EXAMINING DAVID MAURER; INCLUDING ABOUT REPRESENTATIONS MADE TO OTHER COURTS THAT LEASES EXIST, WHICH DID NOT.**

## ASSIGNMENT OF ERROR 11

**THE TRIAL COURT ERRED IN FAILING TO ORDER APPELLEE INVERNESS GARDENS LLC AND ROBERT MAURER TO PAY APPELLANT LINDSEY MAHER'S COURT COSTS WHERE MAHER'S COSTS WERE INCURRED IN PURSUIT OF HER WAGE CLAIM.**

{¶38} We elect to address some of the assignments of error together, and out of the order in which they were raised.

*Sixth, Seventh, and Eighth Assignments of Error*

{¶39} In Maher's sixth, seventh, and eighth assignments of error she makes various arguments contending that the trial court erred in finding that an oral contract for a month-to-month tenancy existed for Maher's apartment at Inverness and awarding Inverness back rent for the months Maher did not pay. Specifically, in Maher's sixth assignment of error she argues that there was not sufficient evidence to support an implied contract between Maher and Inverness. In Maher's seventh assignment of error, she argues that any such oral lease would violate the statute of frauds. In Maher's eighth assignment of error she argues that the lack of duration of the lease should limit the amount of recovery.

{¶40} At the outset, we note that sufficiency of the evidence " 'is a test of adequacy.' " *Eastley v. Volkman,* 132 Ohio St.3d 328, 2012–Ohio–2179, ¶ 11, quoting *State v. Thompkins,* 78 Ohio St.3d 380, 386 (1997). " 'Whether the evidence is legally sufficient to sustain a verdict is a question of law.' " *Id.*

{¶41} In this case, regarding her apartments at Inverness, Maher testified that she stayed in apartment 934J until the end of September 2009. At that time, Maher testified that she was residing with an acquaintance, Eric Sommers. Maher testified that she was paying rent for apartment 934J while she was the resident

manager at inverness in the amount of $450.00 per month, which was a discounted rate due to her employment. Maher was confronted with her tenant ledger, which showed she had been paying rent in the amount of $450.00 for apartment 934J, but it also showed she had missed a payment in August of 2009. (Plaintiff's Ex. 18). Maher testified it was possible she missed a payment while at that apartment.

{¶42} Maher testified that at the end of September 2009/beginning of October 2009 she moved across the hall to a smaller apartment, 934L, and that she stayed in that apartment until moving out the day she was fired, September 13, 2010. Maher testified that she never signed a lease for her apartment, that she never had an oral agreement to lease the apartment, and that she was never told how much she was supposed to pay so she felt it was part of her compensation even though her job stayed the same and she was still residing at Inverness. Maher testified that she would have paid if she had been told what to pay.

{¶43} To contradict Maher's testimony that there was never an agreement for Maher to reside in apartment 934L, Inverness entered into evidence two rent rolls, the first dated January 8, 2010, which showed Maher in apartment 934L on a "mo-mo" tenancy at the rate of $400. (Plaintiff's Ex. 7). The second rent roll entered into evidence was dated May 17, 2010, and contained the same information. (Plaintiff's Ex. 8). Maher testified that it was *her sole responsibility* to create the rent rolls. When asked why there was a figure of $400 and a month-

to-month tenancy listed if there had never been an agreement, Maher testified that she did not know and that she had not put the $400 figure in the rent roll.

{¶44} Moreover, Elizabeth Maurer-Iott, Maher's supervisor who worked from the Bowling Green office, specifically testified that she and Maher had orally agreed to a month-to-month tenancy at the rate of $400 per month, which reflected the same discount Maher had previously received at her last apartment. (Tr. at 194).

{¶45} On appeal, Maher contends that the preceding testimony and exhibits did not constitute sufficient evidence to establish an oral contract for a month-to-month tenancy. In its original decision on the matter where the trial court analyzed the evidence presented, the trial court conducted the following analysis on this issue.

> **The evidence provides that Maher stayed in Unit J with Eric Sommers, an acquaintance until late September 2009, at which point she moved across the hall to Unit L. According to the Tenant Ledger for Unit 934 J, Maher made a pro-rated rental payment in March 2009 of $246.67 and monthly payments of $450.00 in April, May, June, July, and September, 2009. (Plaintiff's Exhibit 18). The evidence clearly indicates that Maher did not make a payment in August 2009. Maher does not dispute that she had an obligation to pay rent for that unit should the Court find that an amount is owed. Maher further conceded that it is possible she missed a payment. Therefore the Court finds that Maher owes $450.00 due to Inverness Gardens for Unit 934 J for the month of August, 2009.**

**\* \* \* [The trial court then analyzes whether Maher owes a late fee and finds that there was no written lease to establish a late fee provision].**

**[The trial court analyzes whether Maher owes rent for apartment 934J for October and November of 2009 and finds that she did not as Inverness knew she had moved across the hall and had given her permission to do so]. \* \* \***

**Maher alleges that she has no obligation to pay rent for her term of October 2009 to September 2010 because there was no meeting of the minds regarding essential lease terms.**

**According to Plaintiff's Exhibit 6, a rent roll dated July 8, 2009, Maher was occupying Unit 934 J with Eric Sommers on a month-to-month tenancy at the rate of $450.00 a month. There is no dispute this rate was discounted due to her employment at Inverness. The rate of Unit 934 J was $500.00 on a rent roll dated January 1, 2010 (after Maher moved out) and $525.00 on May 17, 2010. (Plaintiff's Exhibits 7-8). Plaintiff's Exhibit 6 shows the rent of Unit 934 L as $475.00 on July 8, 2009. On January 1, 2010, the rent roll was updated to show Maher residing in Unit 934 L at a rent of $400.00. It was the duty of Maher to create the rent rolls and submit them to the home office in Bowling Green, Ohio.**

**Beth Iott, Maher's direct supervisor, confirmed that the parties had agreed upon a discounted monthly rent obligation of $400.00. It is clear from the testimony that Maher had paid rent previously and even admitted that she had an expectation to owe rent for Unit 934 L. It is disingenuous for Maher to assert that she need not pay rent for the unit due to her employment with Inverness based upon their prior arrangement. Moreover, the fact that Maher was the only one would could have entered this amount into the computer, which happens to be an identical discount to that applied to her previous unit, is compelling evidence that the parties had agreed to a price of $400.00 per month for Unit 934 L.**

-20-

> **As a result, the Court finds that Maher owed $400.00 per month for her occupation of Unit L which she failed to pay for the months of October, November, and December 2009, and for January, February, March, April, May, June, July, August, and thirteen days of September 2010. Therefore Plaintiff is entitled to damages in the amount of $4,573.33 as back rent due for Unit 934 L from October 2009 to September 13, 2010. * * ***

(Doc. No. 91).

**{¶46}** The trial court conducted a thorough analysis of the evidence and testimony presented, and we cannot find that the trial court erred in determining that sufficient evidence was presented to establish an oral contract for a month-to-month tenancy. The trial court's decision was supported by competent credible evidence, therefore, Maher's sixth assignment of error contending that sufficient evidence was not presented is overruled.

**{¶47}** Maher next claims in her seventh assignment of error that if this Court determines an oral lease did exist, any oral lease executed with Inverness would violate the statute of frauds. Maher specifically argues that even if an oral lease is found, there is no evidence of duration.

**{¶48}** Ohio's statute of frauds requires that leases be put into writing. R.C. § 1335.04. "However, 'if an agreement may be terminated or completed within a year upon the happening of some contingency, it is not covered by the Statute of Frauds.' " *Hastings v. J.E. Scott Corp.*, 2d Dist. Miami No. 22296, 2004-Ohio-

1821, ¶ 16, quoting *Ford v.. Tandy Transp., Inc.*, 86 Ohio App.3d 364, 382 (4th Dist.1993).

{¶49} In this case, the rent rolls for January and May of 2010 listed Maher's tenancy as "mo-mo" under the lease expiration heading. Only one other lease on those rent rolls contained the same "mo-mo" designation, whereas all of the other leases (in excess of 80), contained a specified date the lease would end. In *Hastings v. J.E. Scott Corp.*, 2d Dist. Miami No. 22296, 2004-Ohio-1821, the Second District Court of Appeals determined that where an oral lease is for a month-to-month tenancy the lease could be completed within a year and therefore was not covered by the statute of frauds. *Hastings* at ¶ 16. The same analysis applies here, and Maher's argument that no duration was specified is not well-taken. Therefore, Maher's seventh assignment of error is overruled.

{¶50} Maher next argues in her eighth assignment of error that the trial court erred by awarding Inverness back rent when there was no "agreed duration or term." Specifically, Maher contends that "the extent of contract could have only been two (2) months; that being the first month, or month of residency and the notice period of one month." (Appt.'s Br. at 18). Notably, Maher cites no law to support this contention and we have previously determined that the trial court did not err in determining that Maher had agreed to a month-to-month tenancy at the rate of $400. Therefore we cannot find that the trial court erred by determining

that Maher was liable for more than two months of rent. Accordingly, Maher's eighth assignment of error is overruled.

*Ninth Assignment of Error*

**{¶51}** In Maher's ninth assignment of error she argues that the trial court erred by failing to find that Inverness did not mitigate its damages. Specifically, Maher argues that it was Inverness's own fault that it did not find out Maher had not paid rent for apartment 934L, that Inverness should have discovered it earlier and thus mitigated its damages by catching Maher's delinquency and having her move out or pay rent earlier.

**{¶52}** Maher moved into apartment 934L in October of 2009 and resided there until September 13, 2013, when her employment was terminated. Maher testified she moved out the same day she was terminated. Patricia Maurer testified that she first learned of an issue with Maher's management of Inverness in June or July of 2010 when she realized Inverness's accounts were lower than she expected them to be. Patricia asked her daughter Elizabeth Maurer-Iott, Maher's direct supervisor, to look into the issue.

**{¶53}** Elizabeth Maurer-Iott testified that when she looked into the matter by checking the information Maher had been sending to the Bowling Green office, she noticed that several people had not paid rent, so she asked Maher to prepare a "delinquency report" to show who was behind on their rent. Maher did, and the

delinquency report did not include Maher. Others were also left off of the delinquency report who were not paying their rent. Elizabeth Maurer-Iott testified that when the discrepancies were found, she went down and talked to Maher about the inaccuracies and ultimately terminated Maher's employment.

{¶54} Maher now suggests that she should not be liable for her back rent because the discrepancies should have been caught earlier by her supervisors. While closer supervision *may* have revealed the issues earlier, the Maurers all testified that they trusted Maher to be able to do her job, as she had been working for them for a while before Maher was made a resident manager at Inverness. It was also Maher's responsibility to notify her superiors of delinquencies. Once the Maurers learned of the discrepancies that resulted from Maher's management, they promptly investigated the issue. There is no indication that Inverness delayed learning of Maher's discrepancies and thus directly failed to mitigate its damages. Thus we cannot find that the trial court erred in failing to find that Inverness did not mitigate its damages. Therefore, Maher's ninth assignment of error is overruled.

*Fourth Assignment of Error*

{¶55} In Maher's fourth assignment of error, she argues that the trial court erred by determining that Maher did not present sufficient evidence to establish additional uncompensated hours for her wage claims. Specifically, Maher

contends that she presented sufficient evidence that she had driven from Findlay to Bowling Green to drop off paperwork and pick up her paycheck, and she should have been compensated for that time.

{¶56} At trial, Maher testified on direct-examination as follows regarding her purportedly additional uncompensated travel time.

**Q:  Were there other hours you weren't paid for?**

**A:  Yes.**

**Q:  When?**

**A:  If when I would travel to the Bowling Green office I would stop my time at 5, not driving time, to drop off stuff for – if we were there – depending how long I was there.**

**Q:  What were you going to the Bowling Green office to do?**

**A:  To pick up paycheck** [sic] **and to drop off whether it was a full sheet or sometimes applications, apartment checks out – apartment check out files.  The camera if there was any pictures.**

**Q:  Okay.**

**A:  Receipts.**

**Q:  So approximately what's the drive time?**

**A:  Half hour.**

**Q:  Round trip or just there?**

**A:  Just one way.**

**Q:  So there and back was an hour?**

-25-

A: Correct.

Q: And how often did you do that?

A: I'm not going to say every Friday, but the majority of Fridays.

Q: From what date?

A: From when I started working.

* * *

Q: When was that?

A: I believe April of 2008.

Q: All the way up until?

A: September.

(Tr. at 98-99).

{¶57} Elizabeth Mauerer-Iott confirmed that Maher would regularly come to the Bowling Green office on Fridays to pick up her paycheck. (Tr. at 193). Maher contends that this testimony established that she had worked 104 hours (one trip per week for two years) that were unpaid by Inverness. However, Maher also testified on cross-examination as follows.

Q: Okay. You also testified during your direct and cross examination that you had to write down your hours so they would know how much to pay you?

A: Correct.

Q: Did you write down your drive hours?

**A: No.**

**Q: Is it fair to say you needed to drive up there anyway to pick up your paycheck?**

**A: Yeah. Because how else was I going to get it.**

(Tr. at 134).

**{¶58}** When analyzing the evidence on this issue, the trial court made the following determination.

> * * * **Defendant has also claimed that she is entitled to compensation for at least one hour per week for travel to the Bowling Green office to pick up paychecks for herself and for other Inverness employees under the same theory. While it is possible that this time was compensable, Maher has failed to show by a preponderance of the evidence the amount of hours worked based upon the following: (1) Maher failed to show with sufficient specificity the frequency of trips to the Bowling Green office; (2) Maher failed to prove that the trips were made outside of her normal working hours (for which she was compensated); and (3) Maher never raised this issue during the course of her employment. All of these reasons cast serious doubts on her credibility.**
>
> **The Court, therefore, finds that Maher has failed to establish by a preponderance of the evidence that she is entitled to compensation for her purported repeated driving time to the Bowling Green office.**

(Doc. No. 91).

**{¶59}** After reviewing the evidence submitted, and given the trial court's credibility determination, we cannot find that the trial court erred in determining that sufficient evidence was not presented to find that Maher "worked" the

uncompensated hours. Maher testified that she *never* put her travel time on her time card, it is not clear that she did the driving after work hours, and it is not clear how often Maher was taking documents up to the Bowling Green office rather than just picking up her paycheck—or if it was even necessary to drive documents to Bowling Green rather than fax/e-mail them, which Elizabeth Maurer-Iott testified was a normal means of communication. For all of these reasons we cannot find that the trial court erred in determining that sufficient evidence was not presented to establish this portion of Maher's wage claims. Accordingly, Maher's fourth assignment of error is overruled.

*First, Second, and Third Assignments of Error*

**{¶60}** In Maher's first, second, and third assignments of error she makes various arguments contending that the trial court erred by denying her request for attorney's fees related to her wage claims. Specifically, Maher argues that the trial court improperly found that her arguments were barred by *res judicata*, and that the unchallenged attorney fee bill presented to Maher while she was on the witness stand was sufficient to establish attorney fees related to the wage claims.

**{¶61}** "Before awarding attorney fees, a trial court must determine the reasonableness of the time spent on the matter and the reasonableness of the hourly rate." *Hubbard v. Hubbard,* 3d Dist. Defiance No. 4–08–37, 2009–Ohio-2194, ¶ 12, citing *Bagnola v. Bagnola,* 5th Dist. Stark No.2004CA00151, 2004–

Ohio–7286. Evidence must be presented that the hours expended on the case by the attorney were necessary and that the rates are comparable to those in the community for similar services by attorneys of a similar level of skill. *United Assn. of Journeymen & Apprentices of the Plumbing & Pipe Fitting Industry v. Jack's Heating, AirConditioning & Plumbing, Inc.,* 3d Dist. Hardin No. 6–12–06, 2013–Ohio–144, ¶ 20. The party requesting attorney fees carries the burden of proof to show that the request was reasonable. *Id.* at ¶ 22. Trial courts should not speculate as to whether the hours were necessary or that the fee itself is reasonable. *Id.* at ¶¶ 28, 31.

{¶62} We review a trial court's decision on whether to award attorney's fees under an abuse of discretion standard. *United Assn. of Journeymen & Apprentices of the Plumbing & Pipe Fitting Industry v. Jack's Heating, Air Conditioning & Plumbing, Inc.*, 3d Dist. Hardin No. 6-12-06, 2013-Ohio-144, ¶ 15. A trial court will be found to have abused its discretion when its decision is contrary to law, unreasonable, not supported by the evidence, or grossly unsound. *Id*. citing *State v. Boles,* 2d Dist. No. 23037, 2010–Ohio–278, ¶ 17–18, citing *Black's Law Dictionary* 11 (8th Ed.2004). Under the abuse of discretion standard, a reviewing court may not simply substitute its judgment for that of the trial court. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219 (1983). In applying abuse of discretion review to attorney fee awards, we only reverse a trial court's order upon

a showing that "the amount of fees [awarded] is so high or so low as to shock the conscience." *White v. Lima Auto Mall, Inc.,* 3d Dist. Allen No. 1–08–63, 2009–Ohio–411, ¶ 15.

**{¶63}** In this case Maher requested attorney's fees related to her wage claims in her counterclaim. Maher asserts that pursuant to the Ohio Constitution Article II section 34a, attorney's fees are awarded to a claimant who has prevailed on a wage claim.

**{¶64}** In order to attempt to establish her attorney's fees at trial, Maher's counsel presented Maher with a bill while Maher was on the witness stand. The bill, Exhibit P, was for fees related to the wage claims at a charged rate of "175 an hour," which Maher testified represented a discounted rate because of a family relationship with her attorney. (Tr. at 304-305). Exhibit P stated that 12.3 hours had been worked on the wage claims at the rate of $175 an hour, and that $345 in fees had been incurred for a total amount of $2,497.50. Exhibit P was entered into evidence without objection.

**{¶65}** Based on this evidence as to attorney's fees presented at trial, the trial court made the following determination in its decision on the matter after citing the applicable law.

> **Defendant did not seek a [separate] hearing on the issue of attorney fees and did not file a motion to bifurcate the proceedings. As a result, the Court is left to determine Defendant's attorney fees solely from the evidence adduced at**

**the court trial. At trial Defendant's attorney presented a bill of $2,497.50 and Defendant testified that she owed this amount to her attorney for defense of Plaintiff's claims and for prosecution of Defendant's counterclaims. The Defendant has not satisfactorily proven a lodestar number under the *Bittner* analysis and the Court therefore cannot award attorney fees. The Third District has held that submission of an itemized bill is insufficient evidence to carry the burden of proof set forth in *Bittner*. *Id*. (citations omitted). There was no testimony as to the reasonableness of this amount, an affidavit submitted by Defendant's counsel as to the reasonableness of the rate charged and the hours worked, or testimony from an independent attorney regarding the difficulty of the litigation or the reasonableness of the fee charged. There is also no testimony which would allow the Court to apportion the bill of attorney fees into an amount used for prosecution of Defendant's wage claims. Such testimony is necessary given the multiple issues presented in this case.**

**Absent this essential testimony the Court is left to speculate as to a reasonable amount of time necessary to prosecute this action. As a result the Court must deny Defendant her attorney fees in this matter since she has failed to carry the burden under *Bittner* to show that these fees were reasonable.**

(Doc. No. 91).

**{¶66}** After the court's decision was attempted to be memorialized in a final judgment, Maher appealed. This Court dismissed that appeal for lack of a final appealable order based on other outstanding issues. Following the dismissal, Maher filed a "Motion for Hearing for Attorney Fees Regarding Wage Claims." (Doc. No. 108). In the motion, Maher requested a hearing to establish additional fees that had been incurred during the trial and while briefing legal issues related to wage claims. (*Id*.)

-31-

{¶67} On December 19, 2014, the trial court held a hearing to allow the parties to give closing arguments on the issues that this Court had said remained unresolved in the trial court's prior judgment entry. After the parties gave closing arguments as to those issues, Maher attempted to call an attorney to present evidence as to attorney's fees that had been incurred in this case, and to testify that such fees were reasonable and necessary. The trial court did not allow Maher to present this testimony, determining that Maher had already been given an opportunity to properly establish attorney's fees at trial and failed to do so. Maher argued that since the prior judgment had been determined by this Court not to be final she should be able to supplement the evidence that had been submitted regarding attorney's fees. Further, Maher argued that the attorney's bill that was entered into evidence through Maher's testimony at trial was not objected to and thus was effectively stipulated to be reasonable and necessary.

{¶68} Although the trial court disagreed with Maher and denied her the opportunity to present evidence, Maher did proffer the testimony of Mark Owen, an attorney specializing in litigation. Owen testified that he reviewed this case and the bills associated with it. Owen testified that the bills he had been shown appeared reasonable and necessary.

{¶69} The trial court subsequently issued a decision addressing the issues it failed to address in its prior entry and addressing Maher's claims that had been

made regarding attorney's fees since the original non-final judgment. In the decision, the trial court reiterated that Maher failed to establish the reasonableness and necessity of fees *at trial*, and that Maher improperly attempted to substantiate her attorney's fees through her bill alone. (Doc. No. 119). The trial court also stated Maher had not requested a bifurcation of proceedings prior to the trial and had not made any request until after the appeal was dismissed for lack of a final appealable order for fees relating to the trial and post-trial work. (*Id.*) The trial court also found that *res judicata* was applicable to Maher's attorney's fee claims.

{¶70} Maher contends on appeal that her claims for attorney's fees were not barred by *res judicata* because no final judgment had been issued when she made her post-trial request, and that the trial court erred in finding that Maher had not presented sufficient evidence to support her wage claims given that her exhibit related to attorney's fees at trial was not objected to.

{¶71} On our own review, while we would note that perhaps the trial court's use of "*res judicata*" was improper as no final judgment had been issued, it would seem that what the trial court was really suggesting was that it would not *reconsider* its prior ruling on the issue of attorney's fees when Maher already had her attempt at trial to litigate the attorney's fees claims. Nevertheless, the trial court *did* rule on Maher's original request for attorney's fees, finding that Maher had failed to establish that her fees were reasonable and necessary, and the trial

court reiterated the same analysis as an independent basis to deny Maher's claims for attorney's fees in its final decision. The trial court's analysis on this issue in both its earlier decision and in its final decision is consistent with this Court's prior case law.

**{¶72}** This Court has previously addressed the issue of what is required to establish attorney's fees in *United Assn. of Journeymen & Apprentices of the Plumbing & Pipe Fitting Industry v. Jack's Heating, Air Conditioning & Plumbing, Inc.*, 3d Dist. Hardin No. 6-12-06, 2013-Ohio-144. In that case, we recognized "that merely submitting an attorney's itemized bill is insufficient to establish the reasonableness of the amount of work billed." *Jack's Heating* at ¶ 24, citing *Whitaker v. Kear,* 123 Ohio App.3d 413, 424, 704 N.E.2d 317 (4th Dist.1997).

**{¶73}** In this case, all that was presented to establish attorney's fees at trial was Maher's attorney's bill. Maher contends that since the bill was not objected to, opposing counsel essentially stipulated that the fees were reasonable and necessary. However, stipulating to the admissibility of a document is not akin to stipulating to its truth. Similarly, stipulating to the admissibility of an attorney's fee bill would not allow the document to self-authenticate the reasonableness and necessity of the fees, which requires the testimony of someone with the

appropriate expertise. Thus as Maher did not present this testimony, we cannot find that the trial court erred in denying Maher's requests for attorney's fees.

**{¶74}** Similarly we cannot find that the trial court erred in denying the supplemental fees requested by Maher after this Court's dismissal, or that the trial court erred in denying Maher a second opportunity to try and establish what she did not establish in the actual trial itself. The trial court was not presented with newly discovered evidence that would warrant reconsideration of its prior ruling. Rather, the trial court was asked to allow additional evidence when Maher had the opportunity to present the evidence previously. Therefore, we cannot find that the trial court erred on this issue either.

**{¶75}** While *res judicata* was perhaps not an appropriate vehicle for the trial court to use as one basis to deny attorney's fees in this case, the trial court did not solely rely on *res judicata* to deny Maher's requests for attorney's fees as she suggests. And as Maher failed to establish her attorney's fees at trial, we cannot find that the trial court erred. Therefore Maher's first, second, and third assignments of error are overruled as the trial court had a valid independent basis to deny Maher's request for attorney's fees.

*Tenth Assignment of Error*

**{¶76}** In Maher's tenth assignment of error, she argues that the trial court erred by limiting her cross-examination of David Maurer. Specifically, Maher

argues that in limiting David Maurer's cross-examination Maher was unable to establish potential bias and otherwise impeach and contradict the credibility of their claims regarding Maher's oral lease.

**{¶77}** In deciding whether a court erred in admitting or excluding evidence, we review a trial court's decision under an abuse of discretion standard. *Ayers v. Ishler*, 5th Dist. Delaware No. 11 CAE 01 0001, 2011-Ohio-4272, ¶ 23 ("The admission or exclusion of evidence is left to the sound discretion of the trial court.")

**{¶78}** In her case-in-chief, Maher called David Maurer to the stand, who was another manager for Inverness and had not been called by Inverness. David testified to a number of people who were left off of Maher's rent rolls who Inverness had reached an agreement with to pay back rent. David's testimony was used in part to establish the lack of damages from Inverness's fraud claim.

**{¶79}** While David was on the stand, the following exchange occurred as Maher's counsel asked David about his written leases.

> **[MAHER'S COUNSEL]: In response to a motion to dismiss filed in this case, you filed a response that said that the Plaintiff as your client, Inverness Gardens, had no written instruments relating to Candace Watson, David Barnes, Lindsey Bauer, Eric Sommers. But there are written leases for – an actual written lease for David Barnes. Why did you file a response that said there were no written instruments?**
>
> **[PLAINTIFF'S COUNSEL]: Objection, Your Honor. This is an extraneous matter.**

> **THE COURT:  Correct.  This would be a matter for sanctions.  Sustained.**
>
> **[MAHER'S COUNSEL]:  Your Honor, it goes to credibility.**
>
> **THE COURT:  No it doesn't.  I just ruled, so move on.**
>
> **[MAHER'S COUNSEL]:  That's all, Your Honor.**

(Tr. at 297-298).

**{¶80}** On appeal Maher argues that the trial court excluding David from answering the preceding question so prejudiced her as to require a new trial.  She contends that undermining David's credibility would have undermined the purported oral lease with Maher.

**{¶81}** Despite Maher's arguments, the evidence presented as to Maher's oral lease was from Maher and Elizabeth Maurer-Iott.  This testimony was supplemented by Maher's rent rolls, which she created herself.  This Court fails to see how impeaching David's credibility as a manager of Inverness impacts the other evidence presented on that issue.

**{¶82}** Nevertheless, we also fail to see how the question was relevant to the actual claims the trial court was presented with, or how David's actions as representative counsel undermine the claims specifically.  Notwithstanding these points, there is absolutely no indication that any answer David would have given would have altered the trial in such a manner as to warrant Maher receiving a new

trial, thus rendering any error harmless. Therefore for all of these reasons Maher's tenth assignment of error is overruled.

*Fifth Assignment of Error*

{¶83} In Maher's fifth assignment of error she argues that the trial court erred in offsetting the judgment owed to Inverness with Maher's award rather than ordering Maher to be paid within 30 days of the judgment entry. Specifically, Maher argues that pursuant to R.C. 4113.15 and the Ohio Constitution Article II section 34a Maher was required to be paid on her wage claims within 30 days of the finding that she was owed back pay.

{¶84} In this case Maher was awarded a total of $515.00 for her wage claims, which included $105.00 for compensation, $200.00 for a liquidated damages penalty for Inverness's failure to pay within thirty days of Maher's payday and $210.00 for damages under Ohio Constitution Article II section 34a. The trial court added Maher's $515.00 judgment to $700.00 in money orders Maher had sent Inverness in an attempt to settle the matter to give her a total award of $1215.00. Inverness had been awarded a total of $5,068.33 for its claims related to this case. The trial court offset the two awards, awarding Inverness a total of $3,853.33. Maher now claims that the trial court should have ordered the wage claims and damages to be paid immediately to Maher, rather than offset them with Inverness's award. The result of this would be for Inverness to pay

Maher $515.00 up front, and then increase the obligation Maher owed Inverness by $515.00.

**{¶85}** Maher has provided us with no case law to establish that a trial court is wholly without authority to offset competing judgments in a situation such as this. Thus at the very least we cannot find that the trial court abused its discretion in offsetting the judgments. Accordingly, Maher's fifth assignment of error is overruled.

*Eleventh Assignment of Error*

**{¶86}** In Maher's eleventh assignment of error, she argues that the trial court erred in failing to order Inverness to pay all of the court costs where Maher's costs were incurred in pursuit of her wage claim. Specifically, Maher contends that pursuant to R.C. 4111.10 and R.C. 4111.14(L) costs for a successful wage claim lawsuit are required to be paid by the employer.

**{¶87}** At the outset, it is clear from the trial court's judgment entry that the court costs in this case were divided equally between the parties. Maher suggests in her assignment of error that because she prevailed on her wage claim that her employer, Inverness, should be responsible for all of the court costs despite the fact that Inverness prevailed on one of its claims as well.

**{¶88}** The wage claim itself was but one of several claims that proceeded all the way to trial in this case. We cannot accept Maher's suggestion that as a

rule no matter how large or substantial litigation is, if one party prevails on a single wage claim the entire costs *must* be assessed to the other party *even if the other party has prevailed on some or all of its claims*. While the revised code would indicate that costs related to the wage claim must be paid by the employer, there is no indication that in this case splitting the total costs equally between the parties would account for an improper award of costs related to the wage claims when Inverness successfully prosecuted a claim against Maher. Therefore we cannot find that the trial court erred in distributing costs equally, and Maher's eleventh assignment of error is overruled.

{¶89} For the foregoing reasons Maher's assignments of error are overruled and the judgment of the Hancock County Common Pleas Court is affirmed.

*Judgment Affirmed*

**ROGERS, P.J. and PRESTON, J., concur.**

**/jlr**